UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**JOEY PENIX, ADC #177883**                                                              **PETITIONER**

V.                              No. 4:23-CV-00306-LPR-ERE

**DEXTER PAYNE, Director,**
**Arkansas Department of Correction**                                          **RESPONDENT**

## RECOMMENDED DISPOSITION

This Recommendation has been sent to United States District Judge Lee P. Rudofsky. You may file written objections to all or part of this Recommendation. Your objections must: (1) specifically explain the factual and/or legal basis for the objection; and (2) be received by the Clerk of this Court within fourteen days of the date of this Recommendation. If you do not object, you risk waiving the right to appeal questions of fact and Judge Rudofsky may adopt this Recommendation without independently reviewing the record.

**I.     Summary**

Petitioner Joey Penix, an Arkansas Division of Correction inmate, filed a petition for habeas corpus pursuant to 28 U.S.C. § 2254, asserting that: (1) the trial court prevented him from presenting a complete defense, in violation of his federal rights, by excluding the testimony of his proposed expert witness; and (2) he is actually innocent. For reasons that follow, Mr. Penix's habeas petition should be dismissed with prejudice because: (1) the state court's rejection of his federal claim

1

is entitled to deference under 28 U.S.C. § 2254(d); and (2) his actual innocence claim is without merit.

## II.  Background

### A.  Factual Background

On January 25, 2021, a Lawrence County, Arkansas jury convicted Mr. Penix of raping his infant stepdaughter. *Docs. 1, 6-6.* He was sentenced to 25 years in the Arkansas Division of Correction. *Penix v. State*, 2022 Ark. App. 407, 1, 654 S.W.3d 828, 830 (2022), reh'g denied (Nov. 16, 2022).

Evidence at trial established the following. On December 1, 2019, the victim's mother, Kellie Elliot, changed the victim's diaper and noticed that she was bleeding from her genital area. *Penix*, 2022 Ark. App. at 3. Ms. Elliot and her husband, Mr. Penix, took the victim to the emergency room. *Id*. An ER nurse, who testified at trial, examined the victim and noticed a vaginal tear, which she suspected was inflicted by sexual assault. After a physician performed a second examination, the ER nurse reported the possible assault to police and had the victim transferred to the Arkansas Children's Hospital ("ACH") for a sexual-assault test kit procedure. *Id*. When the ER nurse told Ms. Elliot and Mr. Penix that law enforcement would be contacted, Mr. Penix "became increasingly nervous and anxious . . . and was 'unable to sit, paced the room, the hallway, [and] made several trips in and out the door.'" *Id*.

An examination performed at ACH revealed a laceration inside the victim's vaginal opening, caused by penetrating trauma. Two ACH physicians who examined and treated the victim testified that her "injury was 'suspicious for' sexual abuse." *Id.* at 4.

On December 11, 2019, Mr. Penix self-reported to the Highland, Arkansas Police Department. After receiving *Miranda* warnings and waiving his right to counsel, Mr. Penix participated in a video-recorded interview, and he confessed to sexual assault. At trial, one of the officers who interviewed Mr. Penix summarized his confession as follows:

> While in Imboden, he was having foreplay interactions with the child's mother. He proceeded to change [Minor Child's] diaper. During that time, he'd stated that he had placed his right index finger in [Minor Child's] vagina. Upon questioning, he had stated that he inserted it all the way and that he ultimately did that for the purpose of gratification.

*Penix*, 2022 Ark. App. at 4 (brackets in original).

The jury viewed the December 11 interview video, during which Mr. Penix admitted that earlier statements he had provided police were not entirely truthful. Specifically, he conceded that his finger "went deeper than he had initially told the officers and that it was not an accident." *Id.* at 5. He also said that he put "his finger in her vagina because he was 'turned on' after having been 'fooling around'" with Ms. Elliott, and he thought it would turn him on even more. *Id.*

3

Ms. Elliot testified that Mr. Penix changed his story several times, providing different explanations as to what happened, including that he accidentally scratched the victim; he grabbed the victim too hard when she crawled away; his finger "might" have gone into her vagina; and he wiped the victim too hard and felt his finger enter her vagina. *Id.*

B.   **Procedural Background**

Before trial, Mr. Penix notified the State that he intended to introduce expert testimony from Dr. Richard Ofshe about the phenomenon of false confessions and the possible effect of the interrogation method, known as the "Reid technique," utilized by the officers who questioned Mr. Penix before he confessed. *Doc. 6-2 at 20-21.*

The trial court granted the State's motion in limine to exclude Dr. Ofshe's testimony. *Id. at 188-189, 202.* In a written order, the trial court explained that because jurors could competently evaluate for themselves the reliability of Mr. Penix's confession, allowing the proposed expert testimony would invade the province of the jury.[1]

---

[1] The trial court ruled:
Dr. Richard Ofshe's testimony would be on the credibility of the Defendant's confessions and include how much weight the jury should give to the Defendant's confessions. This case involves issues that the jury is competent to address and understand and draw its own conclusions. This Court has found and hereby ruled that all statements provided by the Defendant were freely, knowingly and voluntarily made without threat or coercion. The credibility of the statements made

On appeal, Mr. Penix argued: (1) his confession was the only evidence presented that a crime was committed; (2) the trial court erred in excluding Dr. Ofshe's testimony; (3) the trial court erred in excluding the testimony of the victim's biological father and grandmother; and (4) the trial court lacked jurisdiction. *Doc. 6-6*. All claims were dismissed on the merits. *Penix*, 2022 Ark. App. 407.

Next, Mr. Penix filed petition for rehearing with the Arkansas Court of Appeals, which was denied. *Docs. 6-7, 6-9*. He also filed a petition for review with the Arkansas Supreme Court, which also was denied. *Docs. 6-12*.

On March 30, 2023, Mr. Penix filed the 28 U.S.C. § 2254 habeas petition now before the Court, alleging that the trial court erred in not permitting an "expert to testify as to the Reid Technique [and] unreliable confessions." *Doc. 2 at 5*. Mr. Penix's *pro se* habeas petition did not specify the legal basis for his claim.

In a May 8, 2023 response, Respondent argued that Mr. Penix: (1) failed to raise a federal issue; and (2) even if he had, the Arkansas Court of Appeals' decision is entitled to deference under 28 U.S.C. § 2254(d). *Doc. 6 at 5-6*.

Mr. Penix filed a reply, written by the attorney who represented him at trial and through the appeal, making three points. First, he explained the federal

---

by the Defendant is within the province of the jury and allowing Dr. Richard Ofshe to testify would invade the province of the jury.

*Doc. 6-2 at 202*. The trial court also denied Mr. Penix's motion for reconsideration of the ruling. *Id. at 204-219*.

underpinning of Mr. Penix's claim: that excluding expert witness testimony deprived him of an opportunity to present a complete defense, resulting in constitutional error. *Doc. 9 at 1*. Second, Mr. Penix disputes that § 2254 deference applies. Specifically, he argues that neither the Arkansas Court of Appeals nor the Arkansas Supreme Court addressed his federal claim and "cannot be said to have had a reasonable interpretation of federal precedent." *Id.* Third, Mr. Penix states: "Petitioner would add, at this point, too, that he maintains his innocence." *Id. at 4*.

On June 15, 2023, Respondent filed a sur-reply, arguing that all assertions in the attorney-drafted reply "are wrong." *Doc. 12 at 2*.

The issues are now ripe for resolution.

### III. Discussion

    **A. The Arkansas Court of Appeals Reasonably Adjudicated Mr. Penix's Federal Claim That He Was Denied the Right to Present a Complete Defense**

Mr. Penix argues that exclusion of Dr. Ofshe's testimony deprived him of his constitutional right to present a complete defense. *Doc. 9 at 1-2*. Mr. Penix unsuccessfully presented the same claim in state court. The record confirms that at trial and on direct appeal, Mr. Penix plainly argued that the exclusion of Dr. Ofshe's

testimony violated the state rules of evidence *and* the federal constitution.[2] *Doc. 6-2 at 217; Doc. 6-3 at 24-26*.

In his appeal brief, Mr. Penix acknowledged that the decision to disallow Dr. Ofshe's testimony was properly reviewed under an abuse-of-discretion standard, which permitted reversal only if the trial court: (1) made an erroneous evidentiary ruling; and (2) acted "improvidently, thoughtlessly, or without due consideration." Doc. 6-3 at 20 (citing *Poole v. Poole*, 372 S.W.3d 420, 428, 2009 Ark. App. 860, 11–12 (2009)). Mr. Penix argued that the trial court's evidentiary ruling was in error because the proffered testimony met the standard for admission under Rule 702 of the Arkansas Rules of Evidence and exclusion of the testimony deprived him of his constitutional right to present a complete defense. *Id*. at 20-26. Without specifically

---

[2] Respondent's filings in this case fail to acknowledge that Mr. Penix, through counsel, argued that the exclusion of Dr. Ofshe's testimony violated *both* state and federal law. For example, in his initial filing, Respondent sought dismissal of the habeas petition on the ground that "petitioner's [state] Rule 702 claim does not raise a federal issue." *Doc. 6 at 5*. However, Mr. Penix's petition makes no reference to Rule 702. It simply states that the trial court disallowed expert testimony as to the Reid technique and unreliable confessions and that "unreliable confessions can lead to the conviction[] of innocent people." *Doc. 2 at 5*.

Mr. Penix's habeas petition, combined with his counsel's arguments during trial and on direct appeal, were sufficient to put Respondent on notice that Mr. Penix's habeas claim is based on an alleged constitutional violation. See *Frey v. Schuetzle*, 78 F.3d 359, 361 (8th Cir. 1996) ("[A]s a general rule a *pro se* habeas petition must be given a liberal construction and a habeas petitioner is not required to identify specific legal theories or offer case citations in order to be entitled to relief.") (cleaned up).

Thus, Respondent's characterization of Petitioner's habeas challenge as being based solely on state law was misleading. Counsel should be more careful in future filings. See *Pinkham v. Sara Lee Corp.,* 983 F.2d 824, 833 (8th Cir.1992) ("Attorneys, as officers of the court, have the responsibility to present the record with accuracy and candor.").

7

referencing Mr. Penix's constitutional claim, the Arkansas Court of Appeals affirmed the trial court's decision to exclude Dr. Ofshe's testimony, stating:

> The [trial] court specifically found the jury was competent to address, understand, and draw its own conclusions about the confession. In other words, the court did not believe that this was an area in which scientific, technical, or other specialized knowledge would assist the jury in understanding the evidence, specifically finding that the credibility of Penix's statements was within the province of the jury and allowing Dr. Richard Ofshe to testify would invade the province of the jury. Penix had ample opportunity to cross-examine the officers regarding the interrogation and their techniques. Indeed, he did so, and then he recalled all three officers involved in any interrogation or questioning of Penix—Officers Hamilton, Bailey, and Jackson—and questioned them again in his own case-in-chief. An abuse of discretion is a high threshold that does not simply require error in the circuit court's decision but requires a finding that the circuit court acted improvidently, thoughtlessly, or without due consideration. *Harvey v. State*, 2021 Ark. App. 143, at 2, 619 S.W.3d 902, 904. We simply do not think the court's decision amounted to that here and hold the court did not abuse its discretion in excluding Dr. Ofshe's testimony.

*Penix*, 2022 Ark. App. at 10-11(internal quotation marks omitted).

Under 28 U.S.C. § 2254(d), when a state prisoner's claim has been adjudicated on the merits in state court, a federal court "shall not" grant an application for habeas relief unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."[3] "The question under AEDPA[4] is thus not whether a federal court believes the state court's determination was incorrect, but whether that determination was unreasonable – 'a substantially higher threshold' for a prisoner to meet." *Shoop v. Twyford*, 142 S. Ct. 2037, 2043 (2022) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

Mr. Penix argues that because the Arkansas Court of Appeals failed to discuss or even mention his asserted constitutional right to a meaningful opportunity to present a complete defense, its decision "cannot be said to [be] a reasonable interpretation of federal precedent." *Doc. 9 at 1*. However, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). All that § 2254(d) requires is a "decision" that resulted from an "adjudication." *Id*.

---

[3] A state court decision is "contrary to" clearly established federal law if the state court either "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision is an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. A state prisoner may also seek federal habeas relief on the ground that the state court made an unreasonable determination of the facts. However, the state court's findings are subject to a deferential standard of review and are presumed correct unless the petitioner can rebut those findings through "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also *James v. Bowersox*, 187 F.3d 866, 871 (8th Cir. 1999).

[4] Antiterrorism and Effective Death Penalty Act of 1996.

"When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted."[5] *Johnson v. Williams*, 568 U.S. 289, 301 (2013). Mr. Penix makes no effort to rebut the presumption of adjudication on the merits, and the record supplies no obvious basis for doing so. Thus, the Arkansas Court of Appeals' decision is entitled to deferential review under § 2254.

The following legal principles gleaned from Supreme Court cases addressing the right to present a complete defense demonstrate that the state court's decision affirming the exclusion of Dr. Ofshe's testimony is completely consistent with clearly established federal law.

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment . . . or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, . . . the Constitution guarantees criminal defendants 'a meaningful

---

[5] The presumption of state court adjudication may be rebutted in "unusual" circumstances. *Johnson v. Williams*, 568 U.S. 289, 301 (2013). For example, where (as in this case) the petitioner argues that the trial court excluded evidence in violation of both state evidentiary rules and the defendant's federal rights, the presumption of adjudication may be rebutted if (unlike this case) the state standard is less protective or "quite different from the federal standard, and the defendant's [state court brief] made no effort to develop the basis for the federal claim[.]" *Johnson*, 568 U.S. at 301. But where "the state-law rule subsumes the federal standard—that is, if it is at least as protective as the federal standard—then the federal claim may be regarded as having been adjudicated on the merits." *Williams*, 568 U.S. at 301.

10

opportunity to present a complete defense.'" *Crane v. Kentucky,* 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta,* 467 U.S. 479, 485 (1984)). However, a criminal defendant's right to introduce favorable evidence is not without limit, and "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *Nevada v. Jackson*, 569 U.S. 505, 509 (2013). Rarely has "the right to present a complete defense [been] violated by the exclusion of defense evidence under a state rule of evidence." *Id.* Only a "sufficiently egregious evidentiary error may rise to the level of a constitutional violation . . . ." *Schneider v. Erickson*, 7 F.3d 760, 762 (8th Cir. 1993) (citation omitted). Importantly, in cases involving the exclusion of testimony, the constitutional right to present a defense is not impaired where the defendant retains a *meaningful* opportunity to present his theory of defense.

In his reply, Mr. Penix suggests that the Arkansas Court of Appeals' decision runs counter to the Supreme Court's decision in *Crane v. Kentucky*, 476 U.S. 683 (1986). In *Crane*, a sixteen-year-old defendant was convicted of murder, and the only evidence linking him to the crime was his confession. *Id*. at 684. The defendant sought to challenge the reliability and credibility of his inculpatory statements with testimony about the environment in which police secured his confession. The trial court excluded *all* testimony about the circumstances of the confession, and the Kentucky Supreme Court affirmed.

11

The Supreme Court granted certiorari and held that the "wholesale exclusion" of a body of potentially exculpatory evidence, which was "all but indispensable" to the defendant's theory of defense succeeding, deprived the defendant of his constitutional right to a fair opportunity to present a defense. *Id*. at 691.

Unlike *Crane*, where the exclusion of evidence prevented the defendant from presenting any evidence regarding the circumstances of his confession, Mr. Penix's lawyer thoroughly cross-examined the officers on their interrogation techniques, and the jury watched a video of Mr. Penix's statements to police and could assess for itself the credibility of his confession. *Doc. 6-4 at 12, 17-18*. Under the § 2254(d) standard, the Arkansas Court of Appeals' decision is entitled to deference.

### B.     Mr. Penix Fails to Present an Actual Innocence Claim

Mr. Penix states that "he maintains his innocence." *Doc. 9 at 4*. A habeas petitioner may assert his actual innocence as a "gateway" to consideration of other procedurally defaulted constitutional claims.[6] Mr. Penix, however, appears to assert his innocence as a substantive claim.

---

[6] A gateway actual innocence claim must satisfy a two-part test: "First, the petitioner's allegations of constitutional error must be supported with new reliable evidence not available at trial." *Amrine v. Bowersox*, 238 F.3d 1023, 1029 (8th Cir. 2001) (citing *Schlup, v. Delo*, 513 U.S. 298, 327-28 (1995). The evidence is "'new only new if it was not available at trial and could not have been discovered earlier through the exercise of due diligence.'" *Amrine*, 238 F.3d at 1029 (quoting *Amrine v. Bowersox,* 128 F.3d 1222 (8th Cir.1997)). "Second, the petitioner must establish 'that it is more likely than not that not that no reasonable juror would have convicted him in light of the new evidence.'" *Id*. at 1029 (quoting *Schlup v. Delo*, 513 U.S. at 327).

The Supreme Court has not definitively weighed in on whether a stand-alone actual innocence claim may be cognizable in habeas. *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013); *Dansby v. Hobbs*, 766 F.3d 809, 816 (8th Cir. 2014). However, the Court has made clear that "the threshold for any such claim, if it were recognized, would be 'extraordinarily high[,]'" making it more difficult to prove than even a gateway actual innocence. *Id.* Mr. Penix's passing reference to "maintain[ing] his innocence" falls far short of the required showing of actual innocence, even for gateway purposes. He asserts his innocence based solely on the strength of his claim that he was denied an opportunity to present a complete defense, but he presents no new, reliable evidence of his innocence. His theory is simply that the jury would not have convicted him if his expert had testified. This is not a sufficient basis for an actual innocence claim. See *Kidd v. Norman*, 651 F.3d 947, 953 (8th Cir. 2011) (holding that a habeas petitioner can prevail on a gateway actual innocence claim only if he "come forward with new reliable evidence which was not available at trial through the exercise of due diligence").

Nor could Mr. Penix possibly prevail on the required showing that no reasonable jury, if presented with new evidence, would have convicted him. Assuming his confessions to the police had been suppressed, this was not the only evidence showing that a crime was committed and that Mr. Penix committed it. The medical evidence (which included testimony from medical personnel who examined

13

the victim), the inculpatory and contradictory statements Mr. Penix made to the victim's mother, and the ER nurse's description of Mr. Penix's behavior at the hospital all point strongly to Mr. Penix's guilt. A reasonable jury, considering the evidence presented at trial other than Mr. Penix's statements to the police, likely would have found Mr. Penix guilty.

For both reasons, Mr. Penix's actual innocence claim should be denied.

## IV. Conclusion

As explained above, Mr. Penix's claim for habeas relief lacks merit.

IT IS THEREFORE RECOMMENDED THAT:

1. The 28 U.S.C. § 2254 Petition for a Writ of Habeas Corpus, *Doc. 2*, be DENIED, and this case be DISMISSED with prejudice.

2. Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, a Certificate of Appealability should be DENIED.

Dated 13 July 2023.

_____
UNITED STATES MAGISTRATE JUDGE